## James W. Vincent *v.* Woodland Oil Co., Appellant.

*Contract—Sale—Acceptance of offer—Time—Broker—Commissions.*

An offer to buy or sell, without more, is an offer in the present, to be accepted or refused when made. There is no time which a jury may consider as reasonable or otherwise for the other party to consider it, except by the agreement or concession of the party making it. Until it is accepted it may be withdrawn though that be at the next instant after it is made, and a subsequent acceptance will be of no avail.

In an action to recover commissions for the sale of an oil lease, it appeared that defendant authorized plaintiff to offer the property for sale; that a party agreed to purchase if it was as represented; that on Wednesday plaintiff telegraphed defendant that the purchaser "would go on the property on Friday;" and the same day, Wednesday, defendant telegraphed back to plaintiff "must have an answer before to-night." Plaintiff, after some delay, telegraphed the same night: "I leave to-night and consider trade closed." On Thursday plaintiff was told by defendant that in the meantime another well had come in, and the price of the property had been advanced. *Held,* that the evidence was not sufficient to show that a sale had been made previous to notice to plaintiff of change in price. Middleton *v.* Thompson, 163 Pa. 112, distinguished.

Where a person is employed to sell real estate, and it does not appear that his services are to be rendered on a mere contingency, and his authority is revoked through no fault of his, he is entitled to compensation for his time, labor and expenses, incurred in good faith in the principal's interest before notice of change in the terms of his agency.

Argued Oct. 24, 1894. Appeal, No. 112, .Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1894, No. 57, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover commissions on alleged sale of oil leases. Before MAGEE, J.

At the trial it appeared that, on Nov. 12, 1892, plaintiff was employed by defendant to offer to the Eastern Oil Co. certain oil property which defendant desired to sell. On Monday, Nov. 14th, plaintiff offered the property to O'Neil, superintendent of the Eastern Oil Company at Buffalo, N. Y. Forman, the president, was in New York city. He was telegraphed to. Plaintiff telegraphed the fact of Forman's absence to defendants, Tuesday, Nov. 15, 1892, adding that he would telegraph again that afternoon. On Wednesday plaintiff telegraphed defendant, " Everything is favorable. Will go on property Friday. Will go to Pittsburg to-night."

Plaintiff testified : " Q. What did the Eastern Oil Co. say about purchasing the property ? A. They said if the property was as it was represented, they would purchase the property. Q. You mean in these statements and maps ? A. Yes, sir. Q. That they would purchase the property ? A. Yes, sir ; I then received a message from the Woodland Oil Co. Q. Is this the message ? A. Yes, sir. Message dated Nov. 16, 1892, read as follows : 'No second message from you yesterday. Must have an answer before to-night.' Q. You say you received this message ? A. Yes, sir ; I received that message at half-past seven o'clock in the evening. I immediately went to the telegraph office and wired the Woodland Oil Co. Q. State the cause of the delay. A. That message had been sent in care of George V. Forman's residence and had been taken to his house, and then it was taken from there to Mr. O'Neil's house, where I was. It was delayed an hour or so. On receipt of

that message I went to the telegraph office and wired the Woodland Oil Co. Q. State if this is the message you sent? A. Yes, sir. Message read as follows: 'Your message just received. I leave for Pittsburg to-night and consider trade closed.'" On Thursday plaintiff went to defendant's office and "told Mr. Underwood, vice president of defendant company, that I had sold the property." Then, later, when Vandergrift, president of defendant company, came in, plaintiff testified: "I told him I had sold it, and he says 'They will have to pay more money for it, $50,000 more than when you went up there.' I says, 'I can't help that, that is between you and them, I have nothing to do with that.' I told him that I had arranged for Mr. O'Neil to come the next day and go over the property, and he said, 'All right, you bring Mr. O'Neil up here to-morrow morning into the office.'"

. No sale was subsequently made.

The court charged in part as follows:

" If the authority to sell at the sum of $150,000 was withdrawn, with notice thereof given to the plaintiff,—because he ought to have notice,—before a sale had been made by him on the terms authorized, then his compensation for service based upon a sale would not be earned, but would depend upon other considerations for its ascertainment. Now Mr. Weil has stated in his argument that they do not ask anything except the whole amount claimed, but it is dependent upon what the jury find as to whether there was a commission of $2\frac{1}{2}$ per cent agreed upon, or no agreement as to $2\frac{1}{2}$ per cent or to any compensation, and that it depends on the circumstances what in your judgment the verdict should be; if you find evidence to warrant any other consideration as a reasonable and proper compensation for the services rendered, you disregard what the parties say as to that.

" [It cannot be well said that, if the sale had been negotiated and agreed upon, subject to the examination of the property to be made by the purchaser as to the correctness of the representations made, and accomplished within three or four days or a week under the circumstances of this case, it would be open to the objection that the operation lacked promptness in execution, or that it was not accomplished within a reasonable time to be allowed for the exercise of the privilege con-

ferred upon the plaintiff. The authority conferred, however, was subject to recall at any time before sale was made, but if delayed until the purchaser had been secured, the compensation for the services would then be earned.] " [1]

Plaintiff's point was among others as follows :

" 3. If the jury believe, from the evidence, that J. W. Vincent, the plaintiff, was authorized by the Woodland Oil Co., to offer their property to the Eastern Oil Company, for the present price of $150,000, said Eastern Oil Company were entitled to a reasonable time in which to accept or reject this proposition, and what was such reasonable time, is a question of fact for the jury." Affirmed. [2]

Defendant's points were among others as follows :

" 1. If the jury believe that the price named by defendant was by the plaintiff agreed to be subject to change at any time, he is not entitled to recover, unless before he was notified by the defendants of a change in the price, he had secured a purchaser, who was willing to close the bargain on the terms proposed, without condition or delay. *Answer :* This point is affirmed, with the qualification that the bargain be closed on the terms proposed, without condition or delay, inconsistent or at variance with the reasonable import or terms of the authority conferred." [3]

" 3. That as between the plaintiff and defendant, the plaintiff had no authority, under the evidence in the case, to hold the offer open pending investigation of the property by O'Neil, on behalf of the Eastern Oil Company. *Answer :* Refused. I will not say that under the evidence it was a holding, or that I could properly affirm that point." [4]

" 4. That under the plaintiff's testimony to the effect that the Eastern Oil Company had agreed to purchase at $150,000, provided it became satisfied by the investigation of O'Neil of the truth of the representations as to the property, there was not such an acceptance of the defendant's offer as would entitle the plaintiff to recover. *Answer :* Refused. The matter is substantially submitted to you as a matter of fact, as to whether the plaintiff is entitled to recover." [5]

" 5. That under the plaintiff's testimony to the effect that the Eastern Oil Company had agreed to purchase at $150,000, provided that it became satisfied by the investigation of O'Neil

of the truth of the representations as to the property, the defendant had the right, prior to or pending such investigation, to withdraw the offer to sell at $150,000. *Answer :* Refused. He had the right to withdraw it, and the question is whether it was prior to, or whether he was notified; and I could not affirm that without, perhaps, misleading. By Mr. Sanderson : It does not assert as a fact, that which it is for the jury to find. By the Court : I do not say that the point is vicious, but I say that the words ' under the plaintiff's testimony ' have that effect. It says under these statements, that that is the fact, and I decline to affirm it." [6]

" 6. That under the defendant's testimony, to the effect that the Eastern Oil Company had agreed to purchase, provided it became satisfied by the investigation of the truth of the representations as to the property, and under the undisputed evidence that the defendant telegraphed on Wednesday, before the time fixed for the investigation, requiring an answer that night, the defendant was entitled in reply to a definite, complete and final acceptance of their offer. That the reply of the plaintiff was not such an acceptance, and that, as between the plaintiff and defendant, the defendant had the right to declare the offer no longer open ; and if the jury believe that, in connection with the foregoing, the defendant did so declare to the plaintiff on Thursday, the plaintiff is not entitled to recover. . *Answer :* This point I decline to affirm. I am willing, however, to say to you that if, under all the evidence in the case, you find as a fact that the defendant did declare to the plaintiff that the offer was no longer open, before sale made by him of the property, there can be no recovery in this case of a commission of $2\frac{1}{2}$ per cent on a sale of $150,000." [7]

" 7. That if O.'Neil had notice, prior to leaving Pittsburg, after his investigation of the property and before reporting the result to the Eastern Oil Company, that the defendants were no longer willing to sell for $150,000, the plaintiff is not entitled to recover." Refused. [8]

8. Request for binding instructions. Refused. [9]

Verdict and judgment for plaintiff for $3,940.10.

*Errors assigned* were (1–9) instructions, quoting them.

*John F. Sanderson, Walter Lyon* and *Charles H. McKee* with him, for appellant:—Plaintiff cannot recover a commission because he did not find a purchaser able, ready and willing to purchase on the terms offered: McDonald v. Simcox, 98 Pa. 619; R. R. v. Rolling Mill Co., 119 U. S. 149; Watson v. Brooks, 11 Oregon, 271; Martin v. Fuel Co., 22 Fed. R. 596; McGavock v. Woodlief, 20 How. 221; Hester v. McNeille, 6 Phila. 234.

Plaintiff had no power as agent to postpone purchase until after examination: 1 A. & E. Ency. L. 349; Butler v. Maples, 9 Wall. 766; Konig v. Bayard, 1 Pet. 254; Fairmount Cab Co., 47 Leg. Int. 524; Matthews v. Sowle, 12 Neb. 398; Bliss v. Clark, 16 Gray, 60; 1 A. & E. Ency. L. 359.

Defendants had a right to revoke the offer at any time before final acceptance and did so revoke it: Stitt v. Huidekopers, 17 Wall. 384; Childs v. Gillespie, 147 Pa. 173.

The revocation of the offer before acceptance is a defence to claim for commission: Stitt v. Huidekopers, 17 Wall. 384; Inslee v. Jones, Brightly, 76; Keys v. Johnston, 68 Pa. 42; Creveling v. Wood, 95 Pa. 152; Middleton v. Thompson, 163 Pa. 112; 2 A. & E. Ency. L. 586; Uphoff v. Ulrich, 2 Ill. Ap. 399; Bash v. Hill, 62 Ill. 216; Heffner v. Chambers, 121 Pa. 84; Tower v. O'Neil, 66 Pa. 332.

*A. Leo Weil*, for appellee.—That Vincent procured a party willing, ready and able to buy the property upon the terms given by defendants to plaintiff, cannot be reasonably questioned in this case, and the party thus procured was the Eastern Oil Co., the identical party whom plaintiff had contracted to procure and for procuring whom defendant had agreed to pay two and one half per cent of the price: Middleton v. Thompson, 163 Pa. 112; Pratt v. Patterson's Exrs., 112 Pa. 475; Harwood v. Diemer, 41 Mo. Ap. 48; Kock v. Emmerling, 22 How. (U. S.) 69; Breckingham v. Harris, 10 Col. 455; Mechem on Agency, § 965.

Under the circumstances of the case plaintiff was entitled to recover a quantum meruit for his labor, efforts, services and time expended by virtue of his employment by defendant: Jaekel v. Caldwell, 156 Pa. 266; Durkee v. R. R., 29 Vt. 127; Prickett v. Badger, 1 C. B. N. S. 296; Potts v. Aechtermacht, 93 Pa. 138; R. R. v. Rolling Mill Co., 119 U. S. 149; Sibbald

v. Iron Co., 83 N. Y. 391; Smith v. Fairchild, 7 Col. 510;
Glentworth v. Luther, 21 Barb. 145; Griswold v. Gebbie, 126
Pa. 353; Butler v. Maples, 9 Wall. 766.

The facts of the cases cited by appellants throw little light
on the controversy.

In Ry. v. Rolling Mill Co., 119 U. S. 149, the offer was first
rejected by a refusal to accept on the terms proposed, and sub-
sequently an attempt was made to accept the offer, although it
was not renewed after the rejection.

Watson v. Brooks, 11 Oregon, 271, was where a specific
limit for acceptance was definitely fixed and settled by the
terms of the offer and the proposition of acceptance was to
enable the proposed purchaser to see if the owner could con-
vey a perfect title.

Martin v. Fuel Co., 22 Fed. R. 596, was decided upon the
particular facts of the case. There was no acceptance of the
offer there.

McGavock v. Woodlief, 20 How. 221, was where the trade
fell through because of a tangle in regard to the payments.

Hester v. McNeille, 6 Phila. 234, was decided upon the
phrase in the acceptance, " In case I shall like the price of the
land to be shown to me." This was held to be no acceptance,
it being at the pleasure of the acceptor.

OPINION BY MR. JUSTICE MITCHELL, Jan. 7, 1895:

The learned judge left to the jury whether any sale was made
by the plaintiff before notification of the change of price, and
in doing so he charged them, by affirming plaintiff's third point,
that the Eastern Oil Company as purchasers " were entitled to
a reasonable time in which to accept or reject the proposition,
and what was such reasonable time is a question of fact for the
jury." The same principle runs through the charge as pointed
out in the assignments of error, and it is plain that the finding
of the jury was based upon that view of the case. But the
direction was erroneous, and the undisputed facts show that
there was no such sale.

An offer without more, is an offer in the present, to be ac-
cepted or refused when made. There is no time which a jury
may consider reasonable or otherwise for the other party to
consider it, except by the agreement or concession of the party

making it.   Until it is accepted it may be withdrawn though that be at the next instant after it is made, and a subsequent acceptance will be of no avail.   The circumstances here show conclusively that the defendant's offer was not an open or continuing one.   Time was not only of the essence of it, but was intended to be urgent.   The nature of the property as oil-producing made it liable to fluctuations in value which raise a presumption that time was of the essence of transactions concerning it, and the facts in regard to the wells in the immediate vicinity then going down show that a new development at any hour might materially affect its value and that this was understood by the parties.   The written authority to the plaintiff was to offer it at a " present price," and this was shown to the intended purchasers and was notice to them that the price was likely at any moment to be changed.   The plaintiff made the offer to the Eastern Company on Monday.   On Wednesday plaintiff telegraphed defendant that the purchaser would " go on the property on Friday " and the same day, Wednesday, defendant telegraphed back to plaintiff " must have an answer before to-night."   On Thursday plaintiff returned to Pittsburg and was told by defendant that in the meantime another well had come in, and the price of the property had been advanced. Was there any evidence on which the jury should have been allowed to find that there had been a sale made previous to this notice to plaintiff of the change in price?   We do not find any. There had been no present acceptance of the offer by the Eastern Oil Company.   Plaintiff testified " they said if the property was as it was represented they would purchase " and Forman the president of the Eastern said " we sent our superintendent to investigate the property and concluded to buy it at the price of $150,000 named."   This is substantially all there is on the subject and it shows that at no time previous to the examination of the property, had the Eastern Company accepted the offer, or given anything but a conditional promise to accept thereafter, if in their judgment the property came up to the description.   Before they had done so the defendant withdrew the offer.   There never was the essential basis of a contract of sale, the concurrence of the two minds at the same time.

There is nothing in the case of Middleton v. Thompson, 163 Pa. 112, which conflicts with these views.   It was there held

that a broker has certain implied authority in regard to representations as to the title of his principal, and as to the examination of it by the intending purchaser. So it may be freely conceded here that plaintiff had authority to stipulate that the property should be as it was described, and if the Eastern Company had accepted the offer, subject to such condition, the contract would have been complete, although conditional, and no new conditions could have been added except by consent of both. But as already seen, there was no acceptance at all prior to the withdrawal of the offer. In Middleton v. Thompson there was no question of revocation of the agent's authority. Here the whole case turns on the effect of such revocation by the alteration of the terms on which he was authorized to sell.

There having been no performance of the plaintiff's undertaking to sell, nor what would for the purpose of this case be equivalent, the procuring of a purchaser on the stipulated terms while they were in force, the plaintiff cannot recover commissions as such, but so far as at present appears there was no agreement that his services were to be rendered on a mere contingency, and his authority having been revoked for no fault of his, he may be entitled to proper compensation for his time, labor and expenses, incurred in good faith in the defendant's interest, before notice of the change in the terms of his agency. This matter was submitted by the learned court below to the jury, but in connection with the question of a sale, and we are without means to determine on which basis the jury made up their verdict.

Judgment reversed and venire de novo awarded.