O'Toole, Appellant, v. Escher.

*Principal and agent—Contract—Purchase of land.*

When a party enters into a contract for the purchase of land, with an alleged agent of the owner, and knows that the agent is exceeding his authority, the owner is not bound by the contract, nor answerable for any money paid upon it, unless such owner after knowledge, has ratified it.

Argued April 12, 1911. Appeal, No. 30, April T., 1911, by plaintiff, from judgment of C. P. No. 4, Allegheny Co., No. 233, Fourth Term, 1907, on verdict for defendant in case of Patrick O'Toole v. Catherine Escher. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit for money had and received. Before COHEN, J.

The court gave binding instructions for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Thomas Lawry,* of *Lawry & Grierson,* for appellant.

*Joseph F. Mayhugh,* for appellee.

OPINION BY PORTER, J., July 13, 1911:

The plaintiff brought this action to recover of the defendant money paid to one John Bennett, alleging that the latter had received the money as the agent of the defendant under a contract for the sale of land. The plaintiff testified that he had entered into a contract with Bennett, who was acting as the agent for the defendant, for the purchase of a house and lot at the price of $3,050, $300 in cash and the balance in monthly installments of $30.00 each; that he had paid the $300 in cash to Bennett; that the defendant had repudiated the contract, and that Bennett had failed to return to plaintiff the cash paid. The court below gave binding instructions in favor of the defendant, judgment was entered in her favor and the plaintiff appeals.

Assuming that the testimony of the plaintiff was true and also that what he said Bennett told him, as to his authority to represent the defendant, was true, he was not entitled to recover. The plaintiff testified that the contract which he entered into with Bennett, as the agent of the defendant, was to pay for the house $3,050, upon the terms stated, to wit, $300 in cash, and the balance in monthly installments of $30.00 each. When questioned as to what Bennett told him as to the terms upon which he, as agent, held the property for sale, he said: "Q. Did he tell you the purchase price? A. Yes, sir; $3,050. Q. Did he say how it was to be paid? A. He said they wanted $500 down. Q. Whom did he mean by that? A. Miss Escher, wanted $500 down, and I told him I didn't have $500, that all the money I had was $300, and he said that him and Mr. Smail would put up the rest."

He further testified that because of Bennett's failure to procure the deed promptly he called upon Phillip Escher, a brother of the defendant, whom he asked to accompany him to Bennett's office and try to get from Bennett the money or the property; that Mr. Escher then told him in the presence of Bennett that the latter had never had any authority to sell the property at that price or any other price; that he, Escher, had had authority to sell it but not upon the terms of the contract which plaintiff had entered into with Bennett; that no person had authority to sell the property upon the terms of $500 cash and the balance at the rate of $30.00 per month; and that Escher then told him to get his money back from Bennett. After testifying to the above facts the plaintiff was further interrogated and answered as follows: "Q. And then you went after Bennett to get your money back? A. Yes, sir. Q. You and Bennett agreed to settle matters upon the payment of $300? A. If he would give me the $300 I would call it square with him, yes, sir. Q. The deal was declared off, isn't that correct, between you and Bennett, the deal was declared off between you and Bennett upon the payment to you of $300? A. Yes, sir."

Bennett gave the plaintiff a check for the $300, but the bank upon which the check was drawn refused to pay it. There was no evidence in the case which would have warranted a finding that Bennett was authorized to receive money for the defendant upon account of the sale in question or any other transaction. Assuming, however, that Bennett had told the plaintiff the truth, the only inference that can be drawn from the testimony of the plaintiff is that he believed Bennett was authorized to contract for the defendant for the sale of the house and lot at the price stated upon the payment of $500 in cash to the owner, this defendant. The contract into which this plaintiff entered with Bennett and upon which he paid the money called for the payment of only $300 in cash, an amount $200 less than the plaintiff had any reason whatever to believe the owner would accept. The plain-

tiff, therefore, upon his own showing knew that Bennett was exceeding his authority when he made the contract in question. There is nothing in the testimony from which a jury should have been permitted to infer that Bennett represented that his principal would waive the requirement as to the amount of the cash payment. Bennett, according to this testimony, agreed that he, Bennett, and another man would raise the $200 necessary to complete the cash payment. This undertaking of Bennett cannot be held to have been in his capacity as an alleged agent for the defendant, it was an independent undertaking, to do something for this plaintiff. The plaintiff paid his $300 to Bennett not because he believed that Bennett had authority to sell the property for a cash payment of that amount, but because he relied upon Bennett's individual promise to raise, with the assistance of another, the money which would be necessary to complete the cash payment demanded by the owner. The plaintiff thus made Bennett his own associate and agent for the purpose of raising this additional money. Bennett having been convicted of embezzlement, under a charge not growing out of this transaction, this plaintiff now seeks to recover of the defendant the money which he paid to Bennett upon the contract which he had no reason to believe Bennett, as the agent of the defendant, had the authority to make. When a party enters into a contract for the purchase of land with an alleged agent of the owner and knows that that alleged agent is exceeding his authority, the owner is not bound by the contract, nor answerable for any money paid upon it, unless such owner after knowledge has ratified it. The plaintiff upon his own showing was not entitled to recover, even if Bennett had been employed by the defendant as a real estate broker to procure a purchaser for the house and lot, and it is not necessary to consider the question of the sufficiency of the evidence to sustain a finding that he had been employed to procure a purchaser for the property upon more favorable terms. Bennett was not authorized

to procure a purchaser for the property upon the terms of a cash payment of $300, and this plaintiff had no reason to believe that he was so authorized. When it is sought to charge an owner of land with the contract of an alleged agent for the sale thereof, the authority of the agent to sell the land and receive the purchase money should be clearly established by evidence.

The judgment is affirmed.